IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DESSIE KAY,

    Plaintiff,

    v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

    Defendant.

CIVIL ACTION

NO. 1:07-CV-834-GGB

## FINAL ORDER

    Plaintiff Dessie Kay brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI").  Plaintiff filed her application on June 11, 2001 and alleged a disability on-set date of July 15, 1992.[2]  (Administrative Record ("AR") 321-24;

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Pursuant to Fed.R.Civ.P. 25(d)(1), Commissioner Astrue is therefore substituted for former Commissioner JoAnne B. Barnhart as the Defendant in this matter.  No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]Plaintiff also applied for disability insurance benefits, for which the disability on-set date is needed for determination of eligibility.  She has since abandoned that claim.  (AR. 13, 27).  Under SSI, Plaintiff is entitled to benefits beginning the month following the month in which she applied, provided she can establish that she was disabled at the time of her application.  See 20 C.F.R. § 416.335.  Accordingly, the

see AR 13).  Plaintiff's claim went through several levels of administrative review, including two hearings before an administrative law judge ("ALJ"), one after remand by the Appeals Council.  After the second hearing, held on March 29, 2005, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 10).   The Appeals Council denied Plaintiff's request for review, (AR 6), making the ALJ's September 8, 2006 decision the final decision of the Commissioner.  20 C.F.R. § 422.210(a). Plaintiff has exhausted her administrative remedies, and this case is ripe for judicial review.[3]  For the reasons stated below, the Commissioner's final decision denying Plaintiff's SSI application is **REVERSED**, and this action is **REMANDED** to the Commissioner for payment of benefits.

I.      **FACTS**

   A.      **Medical Records**

   Plaintiff's brief accurately sets forth her medical history, (Doc. 11 at 3-10), which does not need to be repeated in detail in this order.  It is sufficient to note, at

appropriate question for review in this case is whether Plaintiff was disabled as of June 11, 2001.

   [3]The parties consented to jurisdiction before a United States Magistrate Judge. (Docket Entry dated Dec. 4, 2007).

2

this stage, that the medical evidence shows that Plaintiff is morbidly obese with mild to severe degenerative changes of the right knee and mild degenerative changes of the right foot, both due to osteoarthritis, and that she has bilateral carpal tunnel syndrome, a history of low back pain, and an enlarged heart.  (AR 66).  Plaintiff also suffers from numbness of her hands and feet and has been diagnosed with peripheral neuropathy. (AR 186, 188, 193, 204, 255).  Other relevant aspects of Plaintiff's medical record are discussed in context below.

### B.      Hearing Testimony

At the administrative hearing on March 29, 2005, Plaintiff testified that she is single and lives with her daughter, son-in-law, and two grandchildren.  (AR 335).  She completed the ninth grade, and was 56 years old as of June 11, 2001, when she applied for SSI.[4]  (See AR 22, 334, 337).  Plaintiff is five feet, ten inches tall and weighs 276 pounds.  (AR 337).  She was last employed as an office cleaner in 1992.  She stopped working because the job required "a lot of lifting," which hurt her back, and because her knees were swelling.  (AR 338).  The heaviest weight she lifted at her previous job was 50 pounds, which she found difficult due to problems with her hands.  (AR 341).

_____

[4]Plaintiff was born on May 11, 1945.  (AR 79).

With respect to her medical condition, Plaintiff testified that she has bilateral carpal tunnel syndrome, which began in 2001, and for which she often wears a splint; arthritis in her knees, back, and feet, which began in the 1990s; an enlarged heart and "something like heart palpitations and a heart murmer"; and numbness and tingling in her hands and feet on a daily basis. (AR 339-42). On a scale of one to ten, Plaintiff rated her total pain level as a nine. (AR 342-43). She takes pain medicine, but it does not help much. She has to "lay down and rest" to deal with pain. (AR 343). Furthermore, her medication causes her to be nauseated, drowsy, and lightheaded. (AR 347).

With respect to mobility, Plaintiff testified that she has used a cane since 2001, and requires it to walk without falling. (AR 344-45). She also suffers from shortness of breath and can walk only "a couple of blocks" before she has to rest. (AR 346). If Plaintiff stands and walks for more than one hour out of eight, her legs, knees, and ankles swell and ache. She can lift five pounds, but lifting more causes back pain. (AR 345). Furthermore, Plaintiff often drops items due to numbness in her hands. (AR 340). In a typical day, Plaintiff reads, watches television, and listens to the radio.

At the time of the hearing, Plaintiff had been under the care of Dr. Andrew Bain

for approximately eight months.  (AR 343).  Dr. Farba Fahrduash had also been treating her for back problems for approximately one year.  (AR 344).

A vocational expert ("VE") testified at the hearing that Plaintiff's past work as a commercial cleaner was "heavy and unskilled as performed at the medium level." Plaintiff acquired no transferable skills while performing her past work.  (AR 348). Medium work requires the ability to lift up to 50 pounds occasionally and up to 25 pounds frequently, and to be on one's feet for at least six hours a day.  (AR 349-50); accord 20 C.F.R. § 416.967(c).

## II.    DEFINITION OF "DISABILITY" AND BURDEN OF PROOF

An individual is considered disabled for purposes of disability benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The burden of proof in a disability case is divided between the claimant and the Commissioner.  The claimant bears the initial burden of establishing the existence of a disabling condition by demonstrating that she is unable to perform her former type

5

of work.  <u>Boyd v. Heckler</u>, 704 F.2d 1207, 1209 (11th Cir. 1983).  Once the claimant

has met this burden, the burden of production shifts to the Commissioner to show that,

considering the claimant's age, education, work experience, and impairment, other

jobs exist in the national economy that the claimant can perform.  <u>See</u> <u>Boyd</u>, 704 F.2d

at 1209.  The overall burden of persuasion, however, remains with the claimant to

prove that she is unable to perform any of the jobs suggested by the Commissioner.

<u>See</u> <u>id</u>.


**III.    <u>FINDINGS OF THE ALJ</u>**

Under the regulations as promulgated by the Commissioner, a five-step

sequential analysis must be followed when evaluating a disability claim.  20 C.F.R.

§ 404.1520(a).  If the ALJ determines (1) that the applicant is currently working and

(2) has a severe impairment, but (3) not an impairment that equals or exceeds in

severity certain impairments described in the Commissioner's Listing of Impairments,

then the ALJ must determine the applicant's residual functional capacity ("RFC").

RFC is defined as what an individual "can still do despite her limitations."  The ALJ

must then decide (4) whether the applicant's RFC is sufficient for her to return to her

past work, and (5) if not – considering her age, education, and work experience –

6

whether she can perform any other gainful and substantial work within the economy. 20 C.F.R. § 404.1520.  The ALJ reached the fourth step in this analysis and found that Plaintiff is capable of performing work at the "medium" exertional level, meaning that she can lift 50 pounds occasionally and lesser amounts more often, and that she can stand or walk at least six house out of an eight hour work day.    20 C.F.R. § 416.967(c).  Given this RFC, the ALJ concluded that Plaintiff could return to her past work as a commercial cleaner.  (AR 20).

With respect to Plaintiff's testimony, the ALJ stated that it was "not reasonably supported by medical evidence," and found her "subjective complaints less than credible."  According to the ALJ, there were "very few objective findings that would reasonably support the chronicity and intensity of [the] alleged symptoms."  In this regard, the ALJ noted that despite a finding of osteoarthritis, x-rays of Plaintiff's knees showed only mild degenerative changes, and her EGD was normal despite complaints of reflux.  The ALJ also noted that the record contains only one mention of disc herniation and no x-ray or MRI evidence to support Plaintiff's claim of back pain.  He further noted that Plaintiff had been advised that her obesity was an aggravating factor for her medical problems but had not attempted to lose weight. (AR 18).  Finally, the ALJ implied that Plaintiff's statement regarding nausea was

belied by her obesity and the fact that she had not lost weight.  The ALJ also noted that "the record does not reflect this alleged side effect nor changes in medication specifically as a result of such side effects."  (AR 19).

## IV.   STANDARD OF REVIEW

In reviewing the Commissioner's decision, this Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The Court's only role is to determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982); 42 U.S.C. § 405(g).  "Substantial evidence" means such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Richardson v. Perales, 402 U.S. 389, 401 (1971).  It may be present even if a preponderance of the evidence weighs in favor of the claimant. Barnes, 932 F.2d at 1358.

8

## V.   **DISCUSSION**

Plaintiff argues that substantial evidence does not support the ALJ's finding that she has the residual functional capacity to perform medium work. The Court agrees. Four physicians examined Plaintiff and provided opinions regarding her capacity to perform work activities. Although the physicians are not in agreement on all of the details, they consistently limited Plaintiff to work activity below the medium exertional level.

Under the Commissioner's rules and regulations, the medical opinion of a treating physician "*must* be given controlling weight, *i.e.*, it must be adopted" if it is "well-supported and not inconsistent with the other substantial evidence in the case record." Social Security Ruling ("SSR") 96-2P, 1996 WL 374188 (July 2, 1996), at *1; accord 20 C.F.R. § 404.1527(d)(2). The Court of Appeals for the Eleventh Circuit has also repeatedly stated that the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2003)(citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); see also Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir. 1987); Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); Schnorr v. Bowen, 816 F.2d 578, 581

AO 72A
(Rev.8/82)

(11th Cir. 1987); <u>McSwain v. Bowen</u>, 814 F.2d 617, 619 (11th Cir. 1987); <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1053 (11th Cir. 1986).  Good cause exists when "(1) [the] treating physician's opinion [is] not bolstered by the evidence; (2) the evidence support[s] a contrary finding; or (3) [the] treating physician's opinion [is] conclusory or inconsistent with the doctor's own medical records."  <u>Phillips</u>, 357 F.3d at 1240; <u>see</u> <u>also</u> <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583 (11th Cir. 1991); <u>Sryock v. Heckler</u>, 764 F.2d 834, 835 (11th Cir. 1985).  To ensure that proper weight is accorded to the opinion of a treating physician, the Commissioner must provide "explicit and adequate" reasons for rejecting that opinion.  <u>Elam v. Railroad Retirement Board</u>, 921 F.2d 1210, 1215 (11th Cir. 1991).[5]  "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true."  <u>MacGregor</u>, 786 F.2d at 1053.

---

[5]The Eleventh Circuit noted in <u>Elam</u> that the "provisions of the Railroad Retirement Act are so closely analogous to those of the Social Security Act that regulations interpreting the latter are applicable to the former."  <u>Elam</u>, 921 F.2d at 1213.

10

A.    **Dr. Ohagwu**

On September 19, 2001, Christian Ohagwu, M.D., completed a consultative evaluation of Plaintiff.  (AR 119-23).  Plaintiff's chief complaints were arthritis, poor circulation, anemia, and stomach pain.  Dr. Ohagwu found that Plaintiff's spine was in normal alignment, without any significant lumbrosacral spine abnormalities, and that the "range of motion of the lumbrosacral spine was preserved."  Plaintiff was also able to raise both arms over her head and could bend, squat, and walk normally.  (AR 122).  Dr. Ohagwu observed that Plaintiff was "severely obese" and encouraged her to lose weight to alleviate her back and knee pain.  Dr. Ohagwu opined that Plaintiff could stand for 30 minutes at a time, sit for 45 minutes, and lift up to 10 pounds.  (AR 119).  He believed that, if Plaintiff's "duties are structured to allow her some sitting time, she can function for several hours in a usual eight hour shift."  (AR 123).

The ALJ referenced the medical records of Dr. Ohagwu in his opinion, (AR 14), but otherwise did not discuss or evaluate Dr. Ohagwu's medical opinion.

B.    **Dr. Chen**

On September 26, 2002, Plaintiff was seen by Natasha Chen, M.D., at the outpatient clinic at Grady Memorial Hospital and assessed as having allergic rhinitis,

11

hypertension, and high cholesterol. (AR 214). Dr. Chen completed a questionnaire regarding Plaintiff, noting that she had first seen her in March of that year, and had treated her approximately every four months thereafter. (AR 237). On the form, Dr. Chen checked "yes" to represent that Plaintiff had "[d]ocumented cardiac enlargement by appropriate imaging techniques . . . resulting in inability to carry on any physical activity . . . ." (AR 237).

Again, the ALJ noted Dr. Chen's findings, but made no further comment regarding her opinion. (AR 15).

### C.    Dr. Fahrduash

Farba Fahrduash, M.D., a doctor at Grady Memorial Hospital's neurology clinic, first examined Plaintiff on July 17, 2002. (AR 178). On October 16, 2002, Dr. Fahrduash completed a "Physical Capacities Evaluation Form" regarding Plaintiff. (AR 174-79). He noted that she has bilateral carpal tunnel syndrome, as well as major joint dysfunctions of the lumbar spine and wrists that cause chronic joint pain and stiffness and result in an inability to perform fine and gross movements effectively. (AR 178-79). Dr. Fahrduash opined that Plaintiff could sit for no more than 2 hours at a time, for a total of 6 hours in an 8 hour workday. He also stated that she could

12

stand and walk for a maximum of 30 minutes at a time, for a total of 2 hours in an 8 hour workday. (AR 174). He concluded that Plaintiff could lift and carry a maximum of 5 pounds occasionally and no pounds frequently, and that she could not do any simple grasping or fine manipulation with either hand. Dr. Fahrduash believed that, if working, Plaintiff would need the freedom to rest, recline, or lie down at her discretion. (AR 174-75). Finally, he stated that Plaintiff's pain allegations were consistent with clinical findings, and that she had an impairment that could be expected to produce pain at a level that would preclude full-time competitive work activity on a sustained basis. (AR 176).

The ALJ gave "little weight" to Dr. Fahrduash's opinion because he had only been treating Plaintiff for four months and had only seen her "a few times" before completing the form. Furthermore, the ALJ concluded that Dr. Fahrduash's record "does not reflect objective findings that would reasonably support his medical opinion." The ALJ also noted that Dr. Fahrduash's findings were almost three years old and did "not reflect any significant information about [Plaintiff's] present condition." (AR 19).[6]

─────────────────────

[6]Even if Dr. Fahrduash's findings were not relevant to Plaintiff's present condition, they are certainly relevant to whether Plaintiff was disabled at any time since filing her SSI application.

### D.    Dr. Bain

Andrew Bain, M.D., a physician at Grady Memorial Hospital, completed several forms on Plaintiff's behalf, all of which are dated March 17, 2005.  (AR 304-16). They include a pain evaluation, a form regarding "Listing 14.09 Inflammatory Arthritis," and a "Physical Capabilities Evaluation."  Dr. Bain had been treating Plaintiff since August 19, 2004.  (AR 307).

Dr. Bain's pain evaluation indicates that Plaintiff experiences pain in her back, knees, right hip, and feet at the level of 8 to 9 on a scale of 1 to 10, and that she had experienced this level of pain for at least 10 years.  In spite of this, Dr. Bain believed that Plaintiff could "most likely perform [a] desk job or job that does not require a great deal of activity, walking, [or] lifting." (AR 305).  With respect to inflammatory arthritis, Dr. Bain stated that Plaintiff has a "major dysfunction of a joint," which he described as "osteoarthritis of [the] lower back and knees." (AR 307).  Dr. Bain concluded that Plaintiff could work for a total of 6 hours a day, of which 5 could be spent sitting (provided she was not required to sit for more than 2 hours at a time), and that she could walk for 30 minutes at a time, for a maximum of 1 hour in a 6 hour work day.  Dr. Bain opined that Plaintiff could at most lift and carry up to 5 pounds occasionally, but that she had no limitations on her ability to perform hand

14

manipulations.   (AR 311-14).   Finally, Dr. Bain believed that Plaintiff's pain allegations were consistent with clinical findings, and that her osteoarthritis pain would preclude full-time, competitive work activity on a sustained basis.  (AR 315-16).

The ALJ determined that Dr. Bain's report was "unpersuasive" because only one treatment note from Dr. Bain was in the record.  For this reason, he concluded that Dr. Bain was not a treating physician, but rather a consulting examiner "at most," and that his "findings [were] even less credible in that he made them based on his examination of [Plaintiff] eight months previously."  (AR at 18-19).  In fact, Dr. Bain states in his report that he last treated Plaintiff on February 17, 2005, just one month before completing the report.  (AR 307).

### E.   Analysis

The opinions discussed above are "medical opinions," which are defined in the applicable regulations as statements from physicians "that reflect judgments about the nature and severity" of the claimant's impairments, including what she "can still do despite" those impairments and her "physical or mental restrictions."   20 C.F.R. § 416.927(a)(2).  Even if a treating physician's medical opinion is not well-supported,

it "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927." SSR 96-2P, *4. Those factors, which apply to all medical opinions (whether or not from a treating source), include: (1) length of the treatment relationship and the frequency of examinations, (2) nature and extent of the treatment relationship (*i.e.*, how involved the doctor was in the patient's treatment and how much information he gathered through examinations and testing), (3) how well the opinion is supported with medical evidence, (4) how consistent the opinion is with the record as a whole, and (5) whether the doctor has a relevant specialization. 20 C.F.R. § 404.1527(d). To be "not inconsistent" with the record as a whole, a treating physician's medical opinion "need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2P, 1996 WL 374188, at *3.

Furthermore, the ALJ "may not arbitrarily reject uncontroverted medical testimony." Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982)(citing Goodley v. Harris, 608 F.2d 234 (5th Cir. 1979)); cf. Flynn v. Heckler, 768 F.2d 1273, 1275

16

(11th Cir. 1985)(reversing ALJ's finding that the claimant's impairment was not severe where the record contained "uncontroverted medical testimony from two examining physicians" finding the claimant "totally disabled to return to her specific former work activities"); Bloodsworth v. Heckler, 703 F.2d 1233, 1242)(11th Cir. 1983)(finding in favor of a social security claimant where "[e]very examining physician . . . found evidence of severe pain").  Stated differently, the ALJ may not make findings in conflict with a medical opinion simply by finding fault with that opinion; he must have *medical* evidence in support of his contrary finding.  See Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987)(finding that a treating doctor's opinion could not be rejected where no other medical evidence conclusively countered that opinion and no other good cause was shown).  To allow otherwise would permit the ALJ to substitute his uninformed opinion for the opinion of a medical professional, which has long been prohibited.  See Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982); Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 840-41 (11th Cir. 1992)(Johnson, J., concurring)(finding that

17

an "ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians").[7]

In the instant case, the Court finds that the medical opinions discussed above (whether from a treating or non-treating source) are not sufficiently well supported to be controlling, but are not inconsistent with the record as a whole and are supported, at least in part, by the objective medical evidence. Both Dr. Fahrduash and Dr. Bain found that Plaintiff did not come close to having the ability to perform medium level work. Dr. Ohagwu stated that Plaintiff could "function for several hours in a usual eight hour shift," thereby implying that she could not function for an entire eight hour shift. (AR 123). Furthermore, he limited her to lifting no more than 10 pounds at a time. (AR 119). Dr. Chen also indicated that Plaintiff's ability to engage in physical activity was severely limited by her heart condition. (AR 237). Even if each of these opinions could be construed as deficient in some respect, their consistency with each other and with the record as a whole adds to their individual and cumulative weight.

---

[7]An ALJ may find that the medical evidence, even if consistent, is insufficient to make a determination regarding disability. If this is the case, he is required to seek additional medical evidence before making a decision. See 20 C.F.R. § 416.927(c)(3). Here, the ALJ made no such finding.

Indeed, with the exception of the opinion of a non-examining consultant,[8] the record (including Plaintiff's testimony) consistently supports a finding that Plaintiff's various medical conditions result in severe symptoms that prevent her from performing the physical requirements of medium work.

Because the relevant medical opinions are consistent in all relevant respects, are not inconsistent with the record as a whole, and are uncontroverted by the medical evidence, the Court finds that neither the ALJ's rejection of these opinions, nor his finding that Plaintiff is capable of performing medium work, is supported by substantial evidence.

**F.**      **Remand for benefits warranted**

Finally, Plaintiff contends that this case should be remanded to the Commissioner for payment of benefits, rather than simply for additional proceedings. The role of this Court in Social Security cases is to determine whether the law has been properly applied and whether substantial evidence supports the Commissioner's

---

[8]Even if the ALJ had relied on the contrary opinion of the non-examining consultant (which he did not), "[t]he opinions of nonexamining, reviewing physicians, . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987).

findings; it is not to find facts.  Because of this limited role, when errors occur, the general rule is to reverse and remand to the Commissioner for additional proceedings. See, e.g., Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993)(referring to general practice); Holt v. Sullivan, 921 F.2d 1221, 1223-24 (11th Cir. 1991).  "This court, however, may . . . remand the case for an . . . award[ of] disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  Davis, 985 F.2d 528, 534 (11th Cir. 1993); see also Bowen v. Heckler, 748 F.2d 629, 636 (11th Cir. 1984); Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991).  Put differently, remand for payment of benefits is warranted where "there [is] not substantial evidence on the record as a whole to support the [Commissioner's] denial of benefits."  Bowen, 748 F.2d at 636.

        The Court finds that this is one of the unusual cases warranting remand for an award of benefits.  The record simply does not support a finding that Plaintiff is capable of performing work at the medium exertional level.  Furthermore, whether Plaintiff is capable of light or sedentary work need not be determined because the Commissioner's Medical-Vocational Guidelines require a finding in Plaintiff's favor.

AO 72A
(Rev.8/82)

Those guidelines provide rules for determining disability when certain factors are present.  <u>See</u> 20 C.F.R. § 416.969.  They are applied in cases where the claimant is not engaged in substantial gainful activity and is prevented by a severe impairment from performing her past relevant work.   At all times relevant to this case, Plaintiff was an individual of "advanced age," which is defined as a person age 55 or older.  20 C.F.R. § 416.963(e).  She also had only "limited education," which generally covers individuals who failed to progress past the eleventh grade.   20 C.F.R. § 416.964(b)(3).  Under the Medical-Vocational Guidelines, applicants of advanced age and limited education, who are capable of performing only light or sedentary work and have previously performed only unskilled work, are automatically deemed disabled.  20 C.F.R. Pt. 404, Subpt. P, Appx. 2, §§ 201.00-202.00, Table Nos. 1, 2.

## V.   **CONCLUSION**

For the foregoing reasons, the Commissioner's final decision denying Plaintiff's application for Supplemental Security Income is **REVERSED** and this case is **REMANDED** to the Commissioner for payment of benefits.

AO 72A
(Rev.8/82)

Plaintiff's attorney is authorized to seek this Court's approval of attorney's fees under the Social Security Act provided the motion is filed within 30 days after counsel is served with notice of the amount of past-due benefits.

**IT IS SO ORDERED** this 1st day of May, 2008.

*Gerrilyn G. Brill*

GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

T:\FINAL.SS\kay.wpd

22

AO 72A
(Rev.8/82)